UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x   Chapter 11

-----

:   Case No.01-13591

In re

:

H.C. ENTERTAINMENT CORP.,

:

Debtor.

x

-------------------------------------------------------

------

## MOTION OF WATERFRONT N.Y., L.P. FOR AN ORDER
## PURSUANT TO BANKRUPTCY CODE SECTION 105(a)
## COMPELLING DEBTOR TO (1) PROVIDE ADEQUATE
## PROOF OF INSURANCE COVERAGE OR (2) CEASE OPERATIONS

Waterfront N.Y., L.P. ("Waterfront"), by and through its attorneys, LeBoeuf, Lamb,

Greene & MacRae, L.L.P., makes this motion, pursuant to section 105(a) of title 11 of the United

States Code (the "Bankruptcy Code"), (1) to compel H.C. Entertainment Corp., the debtor and debtor

in possession herein (the "Debtor"), to provide adequate proof of insurance coverage, or, if it is unable

to do so, (2) for an order compelling the Debtor to cease all operation of its nightclub, known as the

Tunnel, which it operates at the premises owned and leased from Waterfront, and respectfully states as

follows:

## BACKGROUND

1. On June 21, 2001 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in the possession of its property and in the management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. Waterfront is the landlord of certain premises known as the Terminal Warehouse Building, located between 27th and 28th Streets and 11th and 12th Avenues in Manhattan. The Debtor leases space in such building from Waterfront pursuant to that certain lease, dated May 22, 1992 (as amended from time to time, the "Lease"), and operates a nightclub at the leased premises known as the Tunnel.[1]

3. The Debtor's failure to provide evidence of insurance coverage in connection with the operation of its nightclub has been a continuing default under the Lease. As set forth in the annexed affidavit of Steven I. Honig, Vice President and General Counsel of Waterfront (the "Honig Affidavit"), on April, 2001, Waterfront received written notice from the Debtor's then-insurer that all of the Debtor's insurance had been cancelled. Prior thereto, and in the months that followed, Waterfront made repeated requests for evidence of adequate insurance coverage, which were met with promises that coverage would be obtained, but little else. The Debtor produced only two temporary insurance binders, which only showed "special event" insurance allegedly in place, but only for two weekends, which have long since expired. Waterfront and the United States Trustee have yet to see any evidence

---

[1] The Debtor currently owes Waterfront a total of approximately $1,800,000 in prepetition rent, late charges and fees, and has yet to pay any post-petition rent due under the Lease.

that the Debtor currently has adequate, regular insurance in place, as required under the Order, the Lease and the United States Trustee's Operating Guidelines and Financial Reporting Requirements for this district.[2]

### The Lease Requires the Debtor to Maintain Adequate Insurance and to Indemnify Waterfront for any Liability in Connection with the Debtor's Operations

4.     The Lease requires the Debtor to maintain, and to include Waterfront as an additional insured under (a) policies of personal injury, bodily injury insurance and property damage in an amount not less than $3 million each occurrence combined single limit and also (b) contractual liability insurance to insure all liabilities of the Debtor assumed as tenant under the Lease. Lease, Art. 46. In addition, the Lease requires the Debtor to provide liquor liability related insurance. Lease, Art. 46.2. The Lease also requires that such coverage not contain exclusions for assault and battery or punitive or exemplary damage.

5.     In addition, the Lease requires the Debtor to indemnify Waterfront from all lawsuits and claims for injury or death by reasons of events at the Tunnel. Lease, Art. 48. Such obligation is not limited by insurance ( Lease, Art. 46). However, the Debtor has no ability to satisfy such claim without adequate insurance, thus leaving potential unpaid administrative claims in the estate.

---

[2]     As the Court is aware from the telephone conference with counsel on July 17, 2001, Waterfront made a motion in the action previously commenced by the Debtor in the Supreme Court, New York County (the "State Court Action") seeking to shut down the Tunnel unless the Debtor provided adequate insurance coverage. Although the Debtor assured the Supreme Court and Waterfront that it was obtaining such insurance, all it ever provided was evidence of temporary insurance as noted above. The State Court denied Waterfront's motion based on this temporary insurance, which has since expired. The proof of insurance required by this Court in the Order involves wholly different time periods and policies than those at issue in the State Court Action.

6.     Waterfront has in the past been named in numerous lawsuits and claims brought by Tunnel patrons exceeding $100 million in the aggregate merely because it owns the building in which the Tunnel operates. Many of these suits allege serious torts to have occurred at the Debtor's nightclub. These allegations, together with the nightclub's notoriety and reputation, cause Waterfront to fear that additional lawsuits and claims are likely in the future. Without insurance, the Debtor has neither the ability to satisfy such claims nor the ability to indemnify Waterfront as required under the Lease.[3]

### The Debtor has Failed to Produce Adequate Proof
### of Insurance as Required  this Court's July 18th Order

7.     This Court entered an order (the "Order") on July 18, 2001 scheduling a sale of the Debtor's assets on August 21, 2001. The Order makes reference to numerous defaults under the Lease that must be cured, including the Debtor's ongoing failure to provide adequate proof of insurance coverage. The Court attempted to remedy the latter problem by requiring, as a provision of the Order, that the Debtor deliver to the United States Trustee and counsel to Waterfront, on or before noon on July 13, 2001,

> copies of all insurance policies required under the Lease and any and all other policies covering the Debtor's assets, together with any and all

---

[3]     Given the limited funds that could become available even if the Debtor is successful in selling its assets and assuming and assigning the Lease, it is highly unlikely that the Debtor would be even able to satisfy such claims, thereby leaving Waterfront as a potentially significant creditor with an administrative claim whose rights have not been adequately protected.

endorsements, riders and proof of payment, as well as the name or
names of the Debtor's insurance agents, to confirm that such policies
are and will remain in full force and effect and that Waterfront N.Y.,
L.P. is listed as an additional insured.

8.     At 5:00 p.m. on July 13, 2001, the Debtor delivered to Waterfront's counsel

the annexed incomplete copies of alleged certificates of insurance from an entity known as RSI

Services, Inc. (annexed hereto as Exhibit "A"). As set forth in the annexed affidavit of Wright Olney, an

insurance agent with Waldron Mahoney, Inc., the documents produced by the Debtors are deficient

because, inter alia, they do not evidence the amounts of coverage required under the terms of the

Lease and fail to indicate that there are no exclusions for assault and battery, animal bites and punitive

or exemplary damages, as required in the Lease.[4]

9.     Nor do the certificates provide proof of insurance, because they have no

policy numbers or binder numbers on them, and are thus untraceable, and are unaccompanied by other

evidence, such as a "cover note," or even a confirmation of coverage from an authorized agent of the

underwriters of the alleged policy or policies. Further, the certificates indicate that purported insurance

is to be issued by Lloyds Underwriters Insurance ("Lloyds"), which is an unadmitted carrier in New

York State.

10.     As Waterfront's counsel stated during the parties' recent telephone conference

with the Court, initial attempts to contact the Debtor's insurance agent to obtain appropriate, reliable

proof of coverage were met with resistence at the direction and instruction of the Debtor. When the

---

[4]     As set forth in the Honig Affidavit, the Debtor's agent has admitted that there are
exclusions in the alleged policy for assault and battery. Furthermore, the alleged
insurance is deficient in the amount of $2 million on its face.

Debtor's agent finally responded to Waterfront's requests, the agent was unable to provide adequate proof of insurance.

## RELIEF REQUESTED

11.     By this Motion, Waterfront seeks (1) to compel the Debtor to produce adequate proof that it has insurance coverage in place, or, if it is unable to do so, (2) an order compelling the Debtor to cease all operations of the Tunnel until further order of this Court.

### The Operation of the Debtor's Nightclub
### Without Adequate Insurance Poses an Unfair
### and Unnecessary Risk to Waterfront and Other Creditors

12.     As set forth above, the Debtor is currently operating its nightclub without evidence of having appropriate insurance coverage in place.  The Debtor's apparent failure to maintain such coverage constitutes a violation of (a) the Court's Order, (b) the Lease and (c) the Operating Guidelines and Financing Reporting Requirements of the Office of the United States Trustee for the Southern District of New York.[5]   Of greater importance, however, is  the immediate and serious threat

---

[5]     The United States Trustee's Operating Guidelines and Financial Reporting Requirements provide that

> Within one week subsequent to the entry of the order for relief, the debtor-in-possession or trustee shall provide the UNITED STATES TRUSTEE with proof that the debtor has all appropriate insurance coverage.  This proof may be in the form of a copy of a binder or current policy.  The insurance coverage should include such items as loss due to fire, theft, business interruption, workmen's compensation, liability, etc.

As set forth above, the documents provided by the Debtor contain neither a confirmed binder nor a current policy.

to Waterfront, the Debtor's estate and its creditors that this failure creates, particularly when weighed against the benefits of the nightclub's continued operation.

13.    As experience has shown, the Tunnel is prone to being sued by its patrons  for significant sums of money.  Without insurance firmly in place, the Debtor's estate -- and thus its creditors -- stand the very real risk that future suits will deplete any assets that would otherwise be made available to pay prepetition claims.  Such suits could easily wipe out the proceeds of any sale of the Debtor's assets and eliminate any benefit such sale could impart on the Debtor's estate.[6]

14.    The risk the Debtor faces by operating the Tunnel without insurance greatly outweighs any benefit that the Tunnel's operation bestows on the Debtor's estate and creditors, particularly in light of the Debtor's recent testimony that the Tunnel is now operating only on a limited basis, added to the fact that such operations apparently fail to generate sufficient income to meet the Debtor's postpetition rent obligations.   Simply put, allowing the Tunnel to continue operations under such circumstances is prejudicial to Waterfront and unfair to its other creditors, as well as its patrons.

---

[6]    In addition to being one of the creditors that stands to lose in the event of future suits, Waterfront stands the added risk of being named in such suits by virtue of owning the premises from which the Tunnel is operated, thus causing Waterfront to become a potential administrative creditor for millions of dollars in an otherwise administratively insolvent case.

**WHEREFORE**, Waterfront respectfully requests that the Court (1) compel the Debtor to provide adequate proof of insurance coverage, and, if the Debtor is unable to do so, (2) enter an order compelling the Debtor to cease operation of the Tunnel nightclub, subject to further order of the Court and (3) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 20, 2001

LeBoeuf, LAMB, GREENE & MacRAE
L.L.P.

By:  s/John P. Campo
    John P. Campo (JC-5241)
    Jay G. Safer (JS-4609)
125 West 55th Street
New York, New York 10019
(212) 424-8000

Counsel for Waterfront N.Y., L.P.

NYC387093

## POLICY CHANGE REQUEST MEMO

| NAME AND ADDRESS OF AGENCY | INSURANCE COMPANY | | |
|---|---|---|---|
| RSI SERVICES INC.<br>76 MIDLAND PLACE<br>TUCKAHOE,    NY   10707<br>AGENCY CODE<br>(914) 771-8000 | (    )    - | | |
| | **POLICY NUMBER** | | **POLICY TYPE** |
| NAME AND MAILING ADDRESS OF INSURED | BINDER | | CPP |
| Hc Entertainment Corp.<br>47 West 20th Street<br>New York    NY   10011<br>(212) 807-7059 | **POLICY PERIOD** (INCEPTION)<br>06/08/01 TO<br>(EFFECTIVE)<br>06/08/01 | | (EXPIRATION)<br>06/08/02 |
| TUNNEL | | | |

DEAR SIR/MADAME:

THE FORMAL INSURANCE POLICY FOR THE TUNNEL WILL TAKE THREE-SIX MONTHS AS NON-ADMITTED INSURANCE PAPER HAS BEEN USED. THE COMPANY HAS NOT ISSUED THE POLICY AS OF YET.

WITH FORMAL PAPERWORK FILINGS REQUIRED IN THE STATE OF NEW YORK, NON-ADMITTED POLICIES TAKE MORE TIME THAN THE NORMAL POLICY.

A BINDER IS IN EFFECT.

PAYMENT HAS BEEN RENDERED.

THANKS,
PAT MITCHELL

YOU MAY CALL THIS OFFICE AT ANY TIME TO VERIFY FURTHER.

# ACORD. INSURANCE BINDER

| | ISSUE DATE (MM/DD/YY) |
|---|---|
| | ☐ 06/07/01 |

**THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.**

| PRODUCER | | COMPANY | | | BINDER NO. | |
|---|---|---|---|---|---|---|
| SI SERVICES INC.<br>6 MIDLAND PLACE<br>UCKAHOE, NY 10707<br>(914) 771-8000 | | LLOYDS | | | TBA | |

| | EFFECTIVE | | | | EXPIRATION | | |
|---|---|---|---|---|---|---|---|
| | DATE | TIME | | | DATE | | TIME |
| | 06/08/01 | 08:00 | X | AM PM | 08/08/01 | X | 12:01 AM NOON |

CODE | SUB-CODE

THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY NO.

INSURED
C Entertainment Corp.
20 12TH AVENUE
New York NY 10011-
(212) 807-7059
DBA THE TUNNEL

**DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (Including Location)**
USUAL TO THE OPERATION OF THE NITE
CLUB LOCATED AT 220 12TH AVENUE
NEW YORK, NEW YORK

COVERING THE AFOREMENTIONED PERIOD
SHOWN ABOVE

**COVERAGES**

| TYPE OF INSURANCE | COVERAGE/FORMS | AMOUNT | DEDUCTIBLE | COINSUR. |
|---|---|---|---|---|
| **PROPERTY** CAUSES OF LOSS ☐ BASIC ☐ BROAD ☐ SPEC. | | | | |
| **GENERAL LIABILITY** | | | | |
| ☐ COMMERCIAL GENERAL LIABILITY ☐ CLAIMS MADE [X] OCCUR | | GENERAL AGGREGATE | $2,000,000 | |
| | | PRODUCTS - COMP/OP AGG. | $1,000,000 | |
| ☐ OWNER'S & CONTRACTOR'S PROT. $1,000,000 LIQ | | PERSONAL & ADV. INJURY | $1,000,000 | |
| | | EACH OCCURRENCE | $1,000,000 | |
| | | FIRE DAMAGE (Any one fire) | $ 50,000 | |
| | RETRO DATE FOR CLAIMS MADE / / | MED EXPENSE (Any one person) | $ | |
| **AUTOMOBILE LIABILITY** | | COMBINED SINGLE LIMIT | $ | |
| ☐ ANY AUTO | | BODILY INJURY (Per person) | $ | |
| ☐ ALL OWNED AUTOS | | BODILY INJURY (Per accident) | $ | |
| ☐ SCHEDULED AUTOS | | PROPERTY DAMAGE | $ | |
| ☐ HIRED AUTOS | | MEDICAL PAYMENTS | $ | |
| ☐ NON-OWNED AUTOS | | PERSONAL INJURY PROT. | $ | |
| ☐ GARAGE LIABILITY | | UNINSURED MOTORIST | $ | |
| | | | $ | |
| **AUTO PHYSICAL DAMAGE** DEDUCTIBLE ☐ ALL VEHICLES ☐ SCHEDULED VEHICLES | | ACTUAL CASH VALUE | | |
| ☐ COLLISION | | STATED AMOUNT | $ | |
| ☐ OTHER THAN COL: | | OTHER | | |
| **EXCESS LIABILITY** | | EACH OCCURRENCE | $ | |
| | | AGGREGATE | $ | |
| ☐ UMBRELLA FORM | | SELF-INSURED RETENTION | | |
| ☐ OTHER THAN UMBRELLA FORM | RETRO DATE FOR CLAIMS MADE / / | STATUTORY LIMITS | | |
| **WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY** | | EACH ACCIDENT | $ | |
| | | DISEASE-POLICY LIMIT | $ | |
| | | DISEASE-EACH EMPLOYEE | $ | |

**SPECIAL CONDITIONS/OTHER COVERAGES**

| NAME & ADDRESS | | MORTGAGEE | [X] ADDITIONAL INSURED |
|---|---|---|---|
| WATERFRONT NY - LP<br>C/O STEVE HOENIG - GENERAL COUNSEL<br>AND ESQ<br>224 12TH AVENUE<br>NEW YORK, NEW YORK 10001-1005 | | ☐ LOSS PAYEE<br>LOAN #<br>AUTHORIZED REPRESENTATIVE | [X] LANDLORD |

# ACORD. CERTIFICATE OF INSURANCE

06/11/01

| | |
|---|---|
| **PRODUCER**<br>SI SERVICES INC.<br>6 MIDLAND PLACE<br><br>UCKAHOE,      NY   10707<br>914) 771-8000 | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |

**COMPANIES AFFORDING COVERAGE**

| | |
|---|---|
| COMPANY LETTER **A** | LLOYDS UNDERWRITERS INSURANCE |
| COMPANY LETTER **B** | |
| COMPANY LETTER **C** | |
| COMPANY LETTER **D** | |
| COMPANY LETTER **E** | |

**INSURED**
c Entertainment Corp.DBA
UNNEL, 47 WEST 20TH STREET

ew York      NY   10011
212) 807-7059

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY**<br>[X] COMMERCIAL GENERAL LIABILITY<br>[ ] CLAIMS MADE [X] OCCUR.<br>[ ] OWNERS & CONTRACTORS PROT.<br>[X] $1,000,000 LIQ | TBA | 06/08/01 | 06/08/02 | GENERAL AGGREGATE | $2,000,000 |
| | | | | | PRODUCTS-COMP/OP AGG. | $1,000,000 |
| | | | | | PERSONAL & ADV. INJURY | $1,000,000 |
| | | | | | EACH OCCURRENCE | $1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 50,000 |
| | | | | | MED. EXPENSE (Any one person) | $ |
| | **AUTOMOBILE LIABILITY**<br>[ ] ANY AUTO<br>[ ] ALL OWNED AUTOS<br>[ ] SCHEDULED AUTOS<br>[ ] HIRED AUTOS<br>[ ] NON-OWNED AUTOS<br>[ ] GARAGE LIABILITY | | / / | / / | COMBINED SINGLE LIMIT | $ |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE | $ |
| | **EXCESS LIABILITY**<br>[ ] UMBRELLA FORM<br>[ ] OTHER THAN UMBRELLA FORM | | / / | / / | EACH OCCURRENCE | $ |
| | | | | | AGGREGATE | $ |
| | **WORKERS COMPENSATION**<br>**AND**<br>**EMPLOYERS' LIABILITY** | | / / | / / | STATUTORY LIMITS | |
| | | | | | EACH ACCIDENT | $ |
| | | | | | DISEASE-POLICY LIMIT | $ |
| | | | | | DISEASE-EACH EMPLOYEE | $ |
| | **OTHER** | | / / | / / | | |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS**
S RESPECTS THE OPERATION OF THE TUNNEL, THE LANDLORD IS AN ADDITIONAL
NSURED AS THEIR INTEREST MAY APPEAR

| | |
|---|---|
| **CERTIFICATE HOLDER**<br>aterfront N Y - Lp<br>/O Steve Hoenig-<br>eneral Counsel And Esq<br>24 12th Avenue<br>ew York     NY 100011005 | **CANCELLATION**<br>SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL __10__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.<br>**AUTHORIZED REPRESENTATIVE** |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

    H.C. ENTERTAINMENT CORP.,

                   Debtor.

Chapter 11

Case No. 01-13591 (REG)

## AFFIDAVIT OF STEVEN I. HONIG IN SUPPORT OF MOTION OF WATERFRONT N.Y., L.P. FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 105(a) COMPELLING DEBTOR TO (1) PROVIDE ADEQUATE PROOF OF INSURANCE COVERAGE OR (2) CEASE OPERATIONS

STATE OF NEW YORK   )
                     )  ss.:
COUNTY OF NEW YORK )

STEVEN I. HONIG, being duly sworn, deposes and states the following:

1.    I am the Vice President and General Counsel of Waterfront NY, L.P. ("Waterfront"). I submit this affidavit in support of the motion (the "Motion") of Waterfront seeking (1) to compel H.C. Entertainment Corp. (the "Debtor") to provide adequate proof of insurance coverage, or, if the Debtor is unable to do so, (2) an order compelling to cease all operation of its nightclub, known as the Tunnel, which it operates at the premises owned and leased from Waterfront. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2.    The Debtor's failure to provide evidence of insurance coverage in connection with the operation of its nightclub has been a continuing default under the Lease. In April, 2001, Waterfront received written notice from the Debtor's then-insurer

that all of the Debtor's insurance had been cancelled. Prior for such cancellation, and in the months that followed, Waterfront made repeated requests for evidence of adequate insurance coverage, which were met with promises that coverage would be obtained, but little else. The Debtor produced two temporary insurance binders, which only showed alleged "special event" insurance, purportedly in place for only two weekends, which have long since expired. Waterfront has yet to see any evidence that the Debtor currently has adequate, regular, insurance in place.

3.     Waterfront has in the past been named in numerous lawsuits and claims brought by Tunnel patrons exceeding $100 million in the aggregate merely because it owns the building in which the Tunnel operates. Many of these suits allege serious torts to have occurred at the Debtor's nightclub. These allegations, together with the nightclub's notoriety and reputation, cause Waterfront to fear that additional lawsuits and claims are likely in the future. Without insurance, the Debtor will not have the ability to satisfy such claims, or indemnify Waterfront as required under the Lease.

4.     The Debtor is obligated under the Lease to provide "three million ($3,000,000) dollars each occurrence combined single limit" of "personal injury, bodily injury, liability and property damage liability insurance", naming "Landlord as an additional insured" and "loss payee." Waterfront is entitled to "certified copies of the policies". Additionally, the Lease provides that the policy contains "one million ($1,000,000) dollars of liquor liability coverage" and contain no exclusions for "assault and battery, animal bite [and] punitive or exemplary damage".

5.     The Lease also provides that any certificate of insurance shall require "thirty (30) days prior written notice to the Landlord" of "cancellation or termination".

6.     Waterfront has asked the Debtor for at least the last 4 months to provide it with evidence of insurance including the cover note which evidences the agreement by the insurer to, in fact, provide such coverage. Waterfront has yet to receive this assurance despite requests to the Debtor and Debtor's counsel.

7.     On Friday, July 13, 2001, at 5:00 p.m., Waterfront's counsel received the documents annexed to the Motion herein as Exhibit A. The following Monday, July 16, 2001, Ira Holm of RSI Insurance, Inc., the Debtor's insurance agent, advised me that Peter Gatien, the principal of the Debtor had instructed him not to provide Waterfront with any further insurance information, despite this Court's order directing that such information be provided by July 13, 2001. I was referred to his attorney.

8.     I participated in the telephone conference hearing with Judge Gerber the following day on July 17, 2001 at 4:00 p.m. regarding the above stated matter, wherein the Judge requested, and counsel for the Debtor, Mark A. Frankel, agreed to advise the insurance agent of the Debtor, Ira Holm, of RSI Insurance, Inc. to cooperate with and provide Waterfront with appropriate evidence of insurance. Additionally, Mr. Frankel advised the Court that he would advise the Debtor not to interfere with its insurance agent's providing Waterfront with such evidence of insurance coverage.

9.     I also was on the phone conference on July 17, 2001 between Mr. Frankel and John Campo, counsel to Waterfront, which occurred immediately after the telephone conference with the Court. Mr. Frankel assured Mr. Campo that the requested insurance information would be available by 10:00 a.m. on July 18th. On July 18th at approximately 10:00 a.m. I telephoned Mr. Holm to request such insurance information, particularly the insurance "cover note." I was kept on hold for an extended period of

time, after which Pat Mitchell, an associate in Mr. Holm's office, indicated to us that Mr. Holm would not take the call and that Ms. Mitchell was working on obtaining the evidence of insurance that we had requested, and that we should call back in about an hour. I immediately faxed a letter request to Mr. Holm (annexed hereto as part of collective Exhibit "A").

10. Between 11:00 a.m. and 12:00 noon I telephoned Mr. Holm again to obtain the evidence of insurance. Ms. Mitchell indicated that Mr. Holm was running out the door but that she was working on it, and that although she did not have the evidence of insurance, she anticipated having it within an hour and a half.

11. At approximately 12:30 to 1:00 p.m. I telephoned Mr. Holm again. He was unavailable and I spoke once again with Ms. Mitchell who advised that she did not have the cover note as of yet, but was still working on it. She further indicated that she was working with a U.S. Lloyds representative that was not in New York (but was in the same time zone as New York), and would attempt to obtain the cover note and provide the information requested and a binder number from the carrier to evidence the insurance. She indicated that we should call back around 2:30 p.m., at which time she hoped to have the information.

12. At approximately 2:30 p.m. Wright Olney, Waterfront's insurance agent, and I called Ms. Mitchell to obtain the insurance information. She advised us that she was still working on it but that the U.S. representative of Lloyds with whom she was working had not provided her with the cover note.

13. At 4:00 p.m. I faxed another letter to Mr. Holm and Ms. Mitchell asking for the confirmation of the insurance (annexed hereto as part of collective Exhibit "A").

14. At approximately 4:30 p.m. Mr. Olney and I called Ms. Mitchell yet again to find out the status of the evidence of insurance coverage. She indicated she had not received anything that would evidence the insurance coverage. She also confirmed receiving my second letter. Mr. Olney indicated that the cover note should easily have been obtained, especially after all of the efforts that had been made.

15. Mr. Olney and I called Ms. Mitchell again at 10:00 a.m. on July 19, 2001. Once again, she indicated she did not have the cover note, but hoped to have the evidence of coverage from the carrier by 2:00 p.m.

16. I telephoned RSI Insurance, Inc. again at 2:00 p.m. that day. Mr. Holm answered the phone call. He advised he was unable to provide a cover note or other evidence of coverage from the carrier because obtaining this type of documentation takes a long time and he did not know when it would be available. Nor would Mr. Holm provide me with any correspondence from his U.S. Lloyds representative concerning the coverage. Mr. Holm further stated that there would be no "assault and battery" coverage, which is expressly required under the Lease. The coverage provided for in the purported certificates, therefore, does not comply with the requirements of the Lease.

17. Accordingly, the Debtor is currently operating its nightclub without evidence of having appropriate insurance coverage in place, in violation of both the Lease, this Court's Order and the U.S. Trustee's Operating Guidelines. The Debtor's continued operation under such circumstances places an unfair and unreasonable risk on Waterfront. As such, Waterfront respectfully requests that the Court require the Debtor to produce adequate proof of insurance coverage or, in the alternative, compel the Debtor to cease operations.

_____
STEVEN I. HONIG

Sworn to before me this 20th
day of July, 2001.

_____
NOTARY PUBLIC

MARIA HAVELKA
Notary Public, State of New York
No. 01HA4637976
Qualified in New York County
Commission Expires August 31, 2002

# Waterfront NY, L.P.

224 12th Avenue
New York, NY 10001
(212) 695-8090
Fax (212) 629-8768

July 18, 2001

*Via Facsimile & Regular Mail*
(914) 771-8009
Ira Holm, Esq.
President
RSI Insurance, Inc.
76 Midland Place
Tuckahoe, NY 10707

Re: H.C. Entertainment Corp.

Dear Ira:

I wish to ask for your help again. Our insurance agent has again pressed us for the information regarding H.C. Entertainment Corp's insurance. I respectfully request, as requested of us by our insurance agent and as concurred with by U.S. Bankruptcy Judge Robert E. Gerber that you provide us with the cover note for the period on and after June 8, 2001 for the insurance for H.C. Entertainment Corp. which lists Waterfront NY as an additional insured as required by the lease, similar to the sample annexed hereto. Please help provide this information that we are rightfully entitled to today.

Thank you in advance for your cooperation.

Very truly yours,

Steven I. Honig
General Counsel

Enclosure

SIH:edp

July 18, 2001
2:30 PM

VIA FAX and
REGULAR MAIL

Ira Holm, Esq.
President

and

Pat Mitchell

RSJ Insurance, Inc.
76 Middland Place
Tackahoe, NY 10707

Re: H.C. Entertainment Corp.

Dear Ira and Pat:

Thank you for your assistance in this matter. As you are aware, our insurance agent has again requested the information regarding H.C. Entertainment's insurance. Pat has been so good as to attempt to obtain the evidence of insurance. She has today at about 1:00 PM indicated to me that she does not have the cover note which we requested last week and before and which we require, however, she is trying to obtain a cover note or other evidence of the U.S. affiliate of Lloyds showing insurance for H.C. Entertainment Corp. which lists Waterfront NY as an additional insured as required by the lease and provides a binder number from the carrier.

Unless we obtain this information by 4:30 PM today, we will have no alternative but to follow the direction of the court in the event that the information requested is not forthcoming and exercise our legal rights in front of the Hon. Robert E. Gerber.

I thank you for your cooperation in advance.

Very truly yours,

Steven I. Honig
Vice President and
General Counsel

cc: Wright Olney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re

H.C. Entertainment Corp.,

              Debtor.

-------------------------------------------------------X

Chapter 11

Case No.

**Affidavit**

STATE OF NEW YORK    )
                      ) s.s.:
COUNTY OF NEW YORK  )

W. Wright Olney, being duly sworn, deposes and states the following:

1.    I am a President of Waldron Mahoney, Inc., an insurance agency in New York, New York and the insurance agent for Waterfront, NY for the last three years.

2.    I have been an insurance agent for over forty years.

3.    I have reviewed the information provided on July 13, 2001, from Mark Frankel, of Backenroth Frankel & Krinsky, LLP, on behalf of H.C. Entertainment Corp (the "Insurance Information").

4.    The Insurance Information is deficient of proof that insurance in compliance with H.C. Entertainment Corp's lease with Waterfront NY because it is issued by Lloyds Underwriters Insurance, which is an unadmitted insurer in New York State.

5.    Under all conditions an "industry wide acceptable Cover Note" is required to provide proof of insurance and show what coverage and which Lloyds syndicates are providing coverage for Lloyds Underwriters Insurance as Lloyd's is an unadmitted carrier in New York State. The certificates provided in the Insurance Information have no policy numbers or binder numbers on them and so are untraceable.

6.    The certificates provided in the Insurance Information do not comply with the insurance requirements under the lease between H.C. Entertainment Corp. and Waterfront NY because the certificates do not evidence at least "three million ($3,000,000.00) dollars each occurrence combined single limit" of insurance coverage as is required under the lease for "personal injury, bodily injury, liability and property damage liability insurance" with "insurance companies acceptable to Landlord and licensed to do business in New York State

"naming Landlord as additional insured". Additionally, the lease provides that the policy contain

"one million ($1,000,000) dollars of liquor liability coverage"

7.    The certificates provided in the insurance information do not indicate that there are no exclusions for "assault and battery, animal bites [and] punitive or exemplary damages" as required in the lease.

8.    The certificates provided in the insurance information do not contain a 30 day notification to the Landlord prior to cancellation as required under the lease.

s/W. Wright Olney

Sworn to before me this 17th
day of July, 2001.

Notary Public

NEIL ROSENBERG
Notary Public - State of New York
NO. 01RO5026251
Qualified in New York County
My Commission Expires 4/11/02